UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL GALLAGHER-STEVENS,<br><br>        Plaintiff,<br><br>     v.<br><br>INDEPENDENT LIVING SYSTEMS, LLC,<br><br>        Defendant. | Case No. 24-cv-04582-WHO<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>Re: Dkt. No. 14 |

Defendant Independent Living Systems, LLC ("ILS") removed this putative wage and hour class action from the Superior Court of California, County of San Francisco, pursuant to 28 U.S.C. §§ 1332, 1441, 1445, as amended by the Class Action Fairness Act of 2005 ("CAFA"). Plaintiff Samuel Gallagher-Stevens moves to remand it because ILS has not made a sufficient showing that there is more than $5 million in controversy, which is the CAFA jurisdictional threshold for removal to federal court. ILS has significantly overestimated the violation rates for most claims in light of Gallagher-Stevens's allegations: a reasonable calculation of damages makes clear that the $5 million CAFA threshold has not been met. The motion to remand is GRANTED.

**BACKGROUND**

Gallagher-Stevens filed the underlying Complaint on May 6, 2024, "on behalf of a California class, defined as all individuals who are or previously were employed by Defendant in California, including any employees staffed with Defendant by a third party, and classified as non-exempt employees…at any time during the period beginning four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court." Complaint ("Compl.") [Dkt.

1-2] ¶ 4.[1]  The proposed subclass is defined as, "all members of the California Class who are or previously were employed by Defendant in California, including any employees staffed with Defendant by a third party, and classified as non-exempt employees…at any time during the period three (3) years prior to the filing of the complaint and ending on the date as determined by the Court…pursuant to Cal. Code of Civ. Proc. § 382." *Id.* ¶ 35.

The Complaint asserts eleven causes of action: (1) unfair competition; (2) failure to pay minimum wages; (3) failure to pay overtime wages; (4) failure to provide required meal periods; (5) failure to provide required rest periods; (6) failure to provide accurate itemized wage statements; (7) failure to reimburse employees for required business expenses; (8) failure to pay wages when due; (9) failure to pay sick pay wages; (10) discrimination and retaliation in violation of the California Fair Employment and Housing Act ("FEHA"); and (11) wrongful termination in violation of public policy. *See generally id.*  Gallagher-Stevens seeks relief on his own behalf and on behalf of the putative class in the form of unpaid minimum wages, unpaid overtime wages, wage statement penalties, meal and rest period compensation, liquidated damages, the cost of unreimbursed business expenses, waiting time penalties, prejudgment interest, and attorney fees, if the plaintiffs prevail. *Id.*, Prayer for Relief.

ILS removed the case from the Superior Court of California, County of San Francisco on July 29, 2024. Dkt. No. 1 (Notice of Removal).  In support of the Notice of Removal, ILS relied upon the Declaration of Carolina Castillo.  Dkt. No. 1-6 (Castillo Declaration).  It now relies upon the Declaration of Hassan Assaf, who works with Libra Analytics, a company that "provides expert analysis and consulting services related to labor and employment matters."  Dkt. No. 15-1 (Assaf Declaration) ¶¶ 1-2.

ILS provided Assaf with estimates of the number of employees in the putative class and the average hourly wage for employees, who are paid bi-weekly.  He was only given timekeeping data starting from April 24, 2023—he had to extrapolate that data to estimate relevant numbers from the start of the class period, which is May 6, 2020.  He estimates that there is a total of

---

[1] ILS is a limited liability company that provides healthcare services in California. *See* Class Action Complaint [Dkt. No. 1-2] ¶¶ 1-4.

$9,2291,133.95 in controversy, which would well exceed the CAFA jurisdictional threshold. *See* Oppo. 18-19 (chart).

- Total Amount in Controversy from Minimum Wage Claim: $1,720,915.12
- Total Amount in Controversy from Overtime Claim $465,819.52
- Total Amount in Controversy from Meal and Rest Period Claim $4,041,343.56
- Total Amount in Controversy from Wage Statement Claim $433,000
- Total Amount in Controversy from Unreimbursed Expenses Claim $139,003.85
- Total Amount in Controversy from Waiting Time Penalties Claim $632,825.11

Subtotal: $7,432,907.16

- Attorneys' Fees Benchmark $1,858,226.79

Total Amount-In-Controversy: **$9,291,133.95**. Gallagher-Stevens disputes ILS's projections for the amount placed in controversy for each category of claims.

## LEGAL STANDARD

A defendant may remove a class action from state to federal court by filing a notice of removal that lays out the grounds for removal. 28 U.S.C. § 1453(b); 28 U.S.C. § 1446(a). The district court must remand the case to state court if it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). For federal jurisdiction under CAFA, the amount in controversy must "exceed[] the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2)(A). The amount in controversy in the litigation can include "damages, costs of compliance with injunctions, attorneys' fees awarded under contract or fee shifting statutes ... [and] future attorneys' fees recoverable by statute or contract." *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018).

The Ninth Circuit applies "the longstanding rule that the party seeking federal jurisdiction on removal bears the burden of establishing that jurisdiction." *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 686 (9th Cir. 2006). When the plaintiff challenges the amount-in-controversy allegations in a notice of removal, parties should submit proof so that the court can determine whether the jurisdictional amount has been shown by a preponderance of the evidence. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83-85 (2014); *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (noting that after the amount in controversy has been challenged, the parties may submit affidavits, declarations, or other

3

1  summary-judgment-type evidence to the court). If the complaint does not include an amount in
2  controversy, the defendant has the burden to "persuade the court that [its] estimate of damages in
3  controversy is a reasonable one." *Ibarra*, 775 F.3d at 1197. The plaintiff's motion to remand will
4  not be successful if it merely challenges the defendant's assumptions without asserting an
5  alternative. *Id.* at 1199.

6  The plaintiff may contest the amount in controversy by making either a "facial" or
7  "factual" attack on the defendant's jurisdictional allegations. *See Salter v. Quality Carriers*, 974
8  F.3d 959, 964 (9th Cir. 2020). "A 'facial' attack accepts the truth of the [defendant's] allegations
9  but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Id.* (quoting
10 *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)). A factual attack "contests the truth of
11 the . . . allegations" themselves. *Id.* (citation omitted). When a plaintiff mounts a factual attack, the
12 burden is on the defendant to show, by a preponderance of the evidence, that the amount in
13 controversy exceeds the $5 million jurisdictional threshold. *Ibarra v. Manheim Investments, Inc.*,
14 775 F.3d 1193, 1197 (9th Cir. 2015) (citing *Dart*, 574 U.S. at 88–89).

15 Both parties may submit evidence supporting the amount in controversy before the district
16 court rules. *Salter*, 974 F.3d at 963; *Ibarra*, 775 F.3d at 1197. A defendant need not make the
17 plaintiff's case for it or prove the amount in controversy beyond a legal certainty. *See Dart*, 574
18 U.S. at 88–89; *see also Arias*, 936 F.3d at 925. Nonetheless, the burden of demonstrating the
19 reasonableness of the assumptions on which the calculation of the amount in controversy was
20 based remained at all times with defendant. The preponderance standard does not require a district
21 court to perform a detailed mathematical calculation of the amount in controversy before
22 determining whether the defendant has satisfied its burden. Rather, "CAFA's requirements are to
23 be tested by consideration of real evidence and the reality of what is at stake in the litigation, using
24 reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d
25 at 1198. The district court should weigh the reasonableness of the removing party's assumptions,
26 not supply further assumptions of its own. After considering any evidence put forth by the parties,
27 and assessing the reasonableness of the defendant's assumptions, "the court then decides where
28 the preponderance lies." *Id.* (citation omitted).

4

**DISCUSSION**

**I.   BURDEN OF PROOF**

As a preliminary matter, ILS mischaracterizes its burden of proof. In response to the motion to remand, ILS insists that it "was not required to submit summary-judgment type evidence in support of its notice of removal." Opposition to Motion to Remand ("Oppo.") [Dkt. No. 15]. True. The United States Supreme Court has established that a notice of removal requires only a "short and plain statement of the grounds for removal" and does not need to require *any* evidentiary submissions. *See Dart*, 574 U.S. at 83-84. But when removal is *opposed*, the defendant must prove "by a preponderance of the evidence" that the amount in controversy really does exceed the jurisdictional threshold. *Dart*, at 88-89. The defendant need not "prove to a legal certainty" that the threshold has been met, but when there is a dispute, a district court must "make findings of jurisdictional fact to which the preponderance standard applies." *Id.* (internal quotations omitted).

**II.   AMOUNT IN CONTROVERSY CALCULATIONS**

Because Gallagher-Stevens has mounted a factual attack against ILS's proposed amount in controversy, the burden is on ILS to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold. *Ibarra*, 775 F.3d at 1197 (citing *Dart*, 574 U.S. at 88–89). To determine the amount in controversy, I must "accept[] the allegations contained in the complaint as true and assume[] [that] the jury will return a verdict in the plaintiff's favor on every claim." *Henry v. Cent. Freight Lines, Inc*., 692 F. App'x 806, 807 (9th Cir. 2017). "The amount in controversy . . . reflects the maximum recovery the plaintiff could reasonably recover." *Arias*, 936 F.3d at 927.

The fundamental problem with ILS's amount in controversy calculations is that it unfairly overestimated the violation rates for some of the claims. This is particularly apparent for the meal and rest period claims and the unpaid minimum wage claims. It also overstated the amount of possible reimbursement claims. In turn, reductions in the amount reasonably at issue in those claims reduces the total amount placed in controversy and related attorney's fees calculations, putting the total amount in controversy well below $5 million.

### A.  Meal and Rest Period Claims

Gallagher-Stevens seeks recovery under section 226.7 and 512 of the California Labor Code for unpaid premiums for noncompliant meal breaks and noncompliant rest breaks. Compl. ¶¶ 86-93.

> Section 512, subdivision (a) of the Labor Code states as follows:
> An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer shall not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

Cal. Lab. Code § 512, subd. (a); *see also* Cal. Code Regs., tit. 8, § 11010(11).

> Section 226.7, subdivision (c), of the Labor Code provides:
> If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.

*Id.* § 226.7, subd. (c).

Gallagher-Stevens alleges that during the relevant four-year time period, he and putative class members "were *from time to time* unable to take thirty (30) minute off duty meal breaks and were not fully relieved of duty for their meal periods" and "required *from time to time* to perform work as ordered by Defendant for more than five (5) hours during some shifts without receiving a meal break." Compl. ¶ 11 (emphasis added). He also alleges that he and putative class members were "*periodically*" denied proper rest periods and that ILS "*from time to time*" required them to "work in excess of four (4) hours without being provided ten (10) minute rest periods." *Id.* ¶¶ 12, 91 (emphasis added).

In calculating the amount that these claims place in controversy, ILS assumes a 75% violation rate. *See* Notice of Removal; Oppo. 9-10. As justification, it offers as evidence the hours that plaintiffs worked, the estimated outer limits of the potential class sizes for employed and terminated employees, and the number of employees that worked during the class period for

6

shifts that were longer than five (5) hours, making them qualified for a meal period. But none of this evidence supports a 75% violation rate in light of the Complaint's allegations.

ILS relies on *Noriesta v. Konica Minolta Business Solutions U.S.A., Inc.*, No. 5:19-cv-00620, 2019 WL 7987117, at *5 (C.D. Cal. Jun. 21, 2019), for the rule that when a plaintiff's complaint "provides little information about the frequency with which [d]efendant allegedly violated California labor laws, [d]efendant may reasonably choose to estimate the frequency of violations when calculating the amount in controversy." In that case, the court considered whether an assumed 100% violation rate was justified where the complaint alleged that the defendant engaged in a "pattern or practice" of wage violations. The court held that it was because the complaint "did not contain 'qualifying words such as 'often' or 'sometimes,' to suggest less than uniform violation that would preclude assuming a 100% violation rate." *Noriesta*, at *5 (internal citations omitted).

Here, the Complaint contains the kinds of qualifying words missing in *Noriesta*. Gallagher-Stevens alleges that the defendants violated meal and rest time rules "from time to time," and "periodically."

Courts in this circuit regularly accept a 20% violation rate for purposes of calculating the amount in controversy for meal and rest period claims where the plaintiff did not specify the frequency in which class members missed meal or rest periods, or where the plaintiff alleged that there was a "pattern or practice" of such violations. *See e.g.*, *Noriesta*, at *3 (20% assumed violation rate for meal and rest break claims appropriate where plaintiff did not specify frequency of violation); *Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-cv-001719-NC, 2019 WL 1501576 (N.D. Cal. Apr. 5, 2019) (20% assumed violation rate for meal and rest break claims appropriate where plaintiff alleged that defendant engaged in a "pattern or practice" of such violations); *Danielsson v. Blood Ctrs. of the Pac.*, No. 19-cv-04592- JCS, 2019 WL 7290476 (N.D. Cal. Dec. 30, 2019) (same). Further, courts have found a 10% violation rate assumption to be reasonable where the plaintiff alleges that violations occurred "from time to time." *See e.g.*, *Salatino v. Am. Airlines, Inc.*, 719 F. Supp. 3d 1094, 1103 (S.D. Cal. 2024) (10% assumed violation rate reasonable in light of the complaint's "from time to time" allegations with respect to

7

meal and rest break claims); *Cavada v. Inter-Continental Hotels Grp., Inc.*, No. 19CV1675-GPC(BLM) 2019 WL 5677846, at *7 (S.D. Cal. Nov. 1, 2019) (finding 10% rest period and 20% meal break violation rates reasonable in light of "from time to time" allegations, and noting that courts around the circuit have interpreted "from time to time" and "periodically" allegations to support violation rates under 25%).

Gallagher-Stevens's allegations that ILS violated meal and rest break periods "from time to time" and "periodically" necessitate a lower assumed violation rate than where plaintiffs allege that their employers engaged in a "pattern or practice" of meal and rest period violations; "from time to time" implies a far less frequent violation rate. A 15% violation rate—a median between 10% and 20% —is a reasonable estimate in light of the allegations in this case.

Accordingly, the appropriate calculation of the amount in controversy for plaintiffs' rest and meal period claims using a 15% rate is: 103,050 shifts x .15 = 15,457.5 violations x $25.84 per hour = $399,421.80 (meal period violation damages) and 105,509 shifts x .15 = 15,826.35 violations x $25.84 per hour = $408,952.88 (rest period violation damages), for a total of $808,374.68.[2]

### B. Unpaid Minimum Wage Claims

Gallagher-Stevens seeks recovery under sections 1194, 1197 and 1197.1 of the California Labor Code for failure to pay minimum wages. Compl. ¶¶ 59-71. Section 1194 provides that "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Cal. Lab. Code § 1194. Section 1197 provides that "[t]he

---

[2] Assaf's calculation determined that between May 6, 2020, and July 4, 2024, there were approximately 103,050 shifts worked by California non-exempt workers that were over five hours and thus qualified for a meal period. Assaf Decl. ¶¶ 11-12; Cal. Labor Code § 512 (meal periods required where employee works more than five hours in a day). He also calculated that there were 105,509 shifts eligible for a rest period. Assaf Decl. ¶¶ 12. Based on the average hourly rate of $25.84, and assuming a 75% violation rate, he calculated the meal period penalties to approximately $1,996,843.27, and the rest period penalties to an additional $2,044,500.29, for a total of $4,041,343.56 placed in controversy by the meal and rest period claims. Assaf Decl. ¶¶ 11-12; Oppo. 11:3-16. I followed his methodology but assumed a 15% violation rate to get my result.

1    minimum wage for employees fixed by the commission or by any applicable state or local law, is
2    the minimum wage to be paid to employees, and the payment of a lower wage than the minimum
3    so fixed is unlawful," and section 1197.1 provides, in relevant part, that "[a]ny employer . . . who
4    pays or causes to be paid to any employee a wage less than the minimum fixed by an applicable
5    state or local law, or by an order of the commission, shall be subject to a civil penalty, restitution
6    of wages, liquidated damages payable to the employee, and any applicable penalties imposed
7    pursuant to Section 203." *Id.* §§ 1197, 1197.1.

8    Through his unpaid minimum wage claim, Gallagher-Stevens asserts that ILS rounds putative class members' hours incorrectly, does not compensate them for time spent doing COVID-19 screenings, and forces them to work through meal periods. Compl. ¶¶ 59-71. ILS estimates that this claim, as it is pleaded, places $1,720,915.12 in controversy. In calculating the maximum amount in controversy for this claim, ILS assumed 24 minutes per shift/day of "unpaid minimum wage" violations. Assaf came to this number based on how courts in this circuit have considered time estimations per shift/day for alleged violations that are comparable to this claim: unpaid "boot-up" time (which defendant persuasively compares to the COVID-19 screening time), unfair rounding practices, and working through meal breaks. *See* Oppo. 6:26-7:7. But because Assaf overestimated the violation rate for the meal and rest breaks claim, his calculations are overstated.

19   I accept Assaf's estimate with respect to the rounding allegations. The Complaint alleges that "as a matter of established company policy and procedure, [ILS] administers a uniform practice of rounding the actual time worked and recorded by [plaintiffs]." Compl. ¶ 8. Courts in this district have held that six minutes per shift/day of rounding is reasonable when estimating rounding damages like this. *See e.g. Altimirano v. Shaw Indus., Inc.*, No. C-13-939 EMC, 2013 WL 2950600, at *10 (N.D. Cal. Jun. 14, 2013).

25   Assaf's estimate is also reasonable with respect to the unpaid wages for the COVID-19 screening time because the screening time can be compared to unpaid "boot-up" time, which courts have held to be reasonably estimated between five and fifteen minutes per shift/day. *Yorba v. Gov't Emps. Ins. Co.*, No. 24-CV-00031-GPC-VET, 2024 WL 3448090, at *9 (S.D. Cal. Jul.

9

17, 2024). Assaf reached his conclusion with respect to unpaid minimum wage damages by assuming 10 minutes of unpaid boot-up time. The Complaint alleges that defendant "engages in the practice" of requiring employees to submit to mandatory COVID-19 screening at the start of the workday, *see* Compl. ¶ 8, so the assumption that such screenings happen during every shift that a putative class member worked during the class period is reasonable.

Assaf used an estimate for unpaid minimum wages for meal breaks that is consistent with what courts in this circuit have found when there was a "pattern or practice" of working through meal breaks—12 minutes per shift/day. *See e.g. Soto v. Tech Packaging, Inc.*, No. ED CV 19-1766-MWF (SHKX), 2019 WL 6492245, at *1 (C.D. Cal. Dec. 3, 2019). But, as discussed above, the Complaint alleges that meal break violations occurred only "periodically," and "from time to time," not that ILS had a "pattern or practice" of meal break violations. Using a 15% violation rate, as discussed in the previous section, would reduce the 12-minute average to 1.8 minutes.

Assaf calculated that there were 40,346 shifts worked by California non-exempt workers from April 24, 2023, through July 5, 2024. Assaf Decl. ¶ 13. Extrapolating to cover the class period, Assaf calculated that there were approximately 107,998 shifts worked by California non-exempt workers during the class period, with an average hourly rate of $25.84. *Id*. Assaf assumed 24 minutes of unpaid time per shift, used $25.84 per hour as the hourly regular rate of pay, and calculated the unpaid minimum wage claims as placing $1,116,125.2 in controversy (107,998 x 24 minutes / 60 minutes per hour = 43,200 hours x $25.84 per hour = $1,116,125.2). *Id.* Substituting my revised time amount of 17.8 minutes of unpaid time per shift in the formula, the result is reduced to $827,898.27.

The calculation for liquidated damages must also be reduced from ILS's assumption of $604,789.92 (107,998 x 24 minutes / 60 minutes per hour = 43,200 hours x $14 per hour[3] = $604,789.92). Again substituting 17.8 for 24 minutes, the total becomes $448,551.69. The total for the unpaid minimum wage claim is $1,276,449.96.

---

[3] Assaf used the average minimum wage as calculated between 2020 and 2024. Assaf Decl. ¶ 13.

### C. Wage Statement Claims

Gallagher-Stevens also seeks recovery under section 226(e)(1) of the California Labor Code for failure to provide complete and accurate wage statements. According to the Complaint, "from time to time [ILS] also failed to provide [Plaintiff and putative class members] with complete and accurate wage statements which failed to show, among other things, the correct gross and net wages earned." Compl. ¶ 14.

> Section 226, subd. e(1) of the Labor Code provides as follows:
> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."

Cal. Lab. Code § 226(e)(1).

Assaf assumes that a 75% violation rate for the inaccurate wage statements calculation of damages. ILS suggests that a 100% violation rate may be warranted in light of the allegations regarding improper rounding and COVID-19 screening practices, both of which reasonably assumed a 100% violation rate. But given Gallagher Stevens's allegation that ILS provided inaccurate wage statements only "from time to time," I accept ILS's expert's slightly lower estimate. *But see* fn.6, *infra*. Taking into account the $4,000 cap for class members where it was applicable and applying a $50 penalty per wage statement for an initial violation and $100 penalty for subsequent violations, Assaf determined that Gallagher-Stevens's wage statement claim places $324,750 in controversy ($50 x 280 + $100 x 4,190 = $433,000 x .75 = $324,750).[4] Assaf Decl. ¶ 16. This estimate is supported by a preponderance of the evidence.

### D. Reimbursement Claims

Gallagher-Stevens seeks relief under California Labor Code section 2802 for failure to

---

[4] Assaf's calculation determined that between May 4, 2023, and July 5, 2024, ILS issued approximately 4,470 wage statements to 280 putative class members. Assaf Decl. ¶ 16. For the purpose of this analysis, the number of wage statements received by each class member during that period was evaluated and California Labor Code § 226(e)'s $4,000 maximum penalty per class member was applied, where applicable. And it is worth noting that if I *were* to assume a 100% violation rate, the amount in controversy for this claim would increase to $433,000.00, which would not push this case past the CAFA jurisdictional threshold. *See infra*, at p. 16 (final calculation).

11

reimburse employees for required expenses. It provides, in relevant part, that:

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

Cal. Lab. Code. § 2802.

ILS explains that "at removal," it calculated the amount in controversy for an unreimbursed business expense claim "by taking $10.44, the weekly cell phone expenditure of individual consumers in the Western region of the United States, according to the United States Department of Labor's Consumer Expenditure Survey from 2022 and multiplying this by the aggregate number of workweeks available to ILS at the time of removal." Notice of Removal ¶¶ 46-47. Assaf appears to use approximately the same method now. Assaf Decl. ¶ 15. ILS assumes a 100% violation rate for the reimbursement claims, which places $139,003.85 in controversy. Oppo. 14-15.

This assumption is flawed. Gallagher-Stevens alleges that he and putative class members "use[d] their own personal cellular phones as a result of and in furtherance of their job duties as employees for Defendant but [were] not reimbursed or indemnified by Defendant for the cost associated with the use of their personal cellular phones for Defendant's benefit." Compl. ¶ 21. While it is reasonable for ILS to assume a 100% violation rate for the reimbursement claims (given that nowhere in the Complaint does the plaintiff offer any indication of the frequency of these alleged violations), the $10.44 weekly figure is based on the average American's weekly cell phone expenditure, which presumably includes personal usage as well as professional usage. The parties give me no basis to estimate ILS employees' cell phone use for employment versus personal use; I would at least halve the weekly figure used by ILS, reducing it to $5.22. The total for reimbursement claims is then $69,501.93.

### E.   Unpaid Overtime Wage Claims[5]

Gallagher-Stevens seeks recovery for failure to pay overtime compensation under section

---

[5] Courts in this circuit have clarified that both overtime and minimum wages can properly be included in the amount in controversy, since they are "separate types of damages." *See, e.g.*, *Lucas*

510 of the California Labor Code, subdivision (a) of which states:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

Cal. Lab. Code § 510, subd. (a); *see also* Cal. Code Regs. tit. 8, § 11050(3)(A).

According to the Complaint, ILS implemented "a policy and practice that failed to accurately record overtime worked… and denied accurate compensation… including, the overtime work performed in excess of eight (8) hours in a workday, and/or twelve (12) hours in a workday, and/or forty (40) hours in any workweek." Compl. ¶ 77. ILS estimates, based on its time records and Assaf's related calculations, that there were approximately 12,020 pay periods worked by California non-exempt workers during the period May 6, 2020, through July 5, 2024, and uses a 100% violation rate.[6] Assaf Dec. ¶ 14. Assuming one (1) hour of unpaid overtime per pay period and using $38.75 per hour ($25.84 x 1.5) as the hourly regular rate of pay, ILS calculates that Gallagher-Stevens' claim for unpaid overtime wages places $465,819.52 in controversy (12,020 x 1 overtime hour = 12,020 overtime hours x $38.76 per hour = $465,819.52). *Id.*

When a plaintiff alleges that a defendant engaged in a policy or practice of failing to properly compensate class members for overtime hours worked, as Gallagher-Stevens does here, courts have found that an assumption of one hour of unpaid overtime per week is reasonable for

---

*v. Michael Kors (USA), Inc.*, No. CV181608MWFMRWX, 2018 WL 2146403 (C.D. Cal. May 9, 2018) ("the unpaid minimum and overtime wages appear to be separate types of damages that can be factored into the amount in controversy"); *Cabrera v. S. Valley Almond Co., LLC*, No. 121CV00748AWIJLT, 2021 WL 5937585, at *9 (E.D. Cal. Dec. 16, 2021) (same).

[6] Other courts have found an assumed 60% violation rate for meal and rest break claims to be appropriate where the plaintiff alleged a "*uniform practice*" of meal and rest break violations, *see Alvarez v. Office Depot, Inc.*, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (emphasis added), and a 50% assumed violation rate to be justified where the plaintiff alleged that defendant "*routinely*" failed to provide meal periods, *see Stevenson v. Dollar Tree Stores*, Inc., No. CIV S-111433 KJM DAD (2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (emphasis added). I assume without deciding in this Order that ILS's preferred violation rates (75% or 100%) could be considered reasonable in a pattern and practice case; the issue was not briefed by the parties and ILS cannot meet the jurisdictional threshold even using the 100% assumption.

13

the purpose of analyzing the amount in controversy under CAFA. *See e.g.*, *Cabrera v. S. Valley Almond Co., LLC*, No. 121CV00748AWIJLT, 2021 WL 5937585, at *9 (E.D. Cal. Dec. 16, 2021); *Mendoza v. Savage Servs. Corp.*, No. 219CV00122RGKMAA, 2019 WL 1260629, at *1 (C.D. Cal. Mar. 19, 2019). ILS's estimate is supported by a preponderance of the evidence with respect to the unpaid overtime claims.

### F. Waiting Time Penalties

Gallagher-Stevens seeks waiting time penalties under section 203 of the California Labor Code, which provides:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201 [or] 202 . . .. any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

Cal. Lab. Code § 203.

ILS assumed a 100% violation rate for waiting time penalties. Plaintiff alleges that ILS "*regularly* failed to pay [Plaintiff and putative class members] their correct wages and accordingly owe waiting time penalties." Compl. ¶ 18 (emphasis added). This claim is derivative of Gallagher-Stevens's other allegations, so it is reasonable to construe his Complaint as alleging that every discharged or quitting employee had at least *some* alleged unpair wages and would, accordingly, be entitled to waiting time penalties were the class claims to prevail. Without more specific allegations in the Complaint or argument regarding the use of the 100% rate, ILS is justified in using it.

Gallagher-Stevens argues that ILS's use of the thirty-day statutory maximum penalty for all class members is unsupported because ILS has not provided evidence that each former employee is entitled to the maximum. But ILS is correct that since Gallagher-Stevens has not specified if or when any wages that were allegedly due at termination have been paid, assuming the thirty-day maximum penalty for all class members is justifiable. Courts have previously found reasonable the use of a thirty-day maximum penalty to calculate the amount in controversy for waiting time claims where the plaintiff has failed to specify if or when any wages due at termination were paid out to them. *See e.g.*, *Wheatley v. MasterBrand Cabinets, LLC*, No. 18-

14

2127 JGB (SPx), 2019 WL 688209 at *6 (E.D. Cal. Feb. 19, 2019). Also, because Gallagher-Stevens' waiting time penalties claim is based at least in part on nonpayment of wages that are allegedly owed to the proposed class under the claims asserted in this action, it is obvious that those claims are not yet paid, so the waiting time would exceed thirty days.

Based on ILS's termination data that spans from May 6, 2021, through April 22, 2023, Assaf calculated that there were 52 California non-exempt employees who were terminated. Assaf Decl. ¶ 10. He extrapolated to estimate that there were at least 103 members of the putative class who ended employment with ILS between May 6, 2021, and July 5, 2024. The 103 putative class members regularly worked an average of 7.93 hours per day. *Id.* The average daily rate for each individual, using the average shift length of 7.93 hours and an average hourly rate of $25.84 per hour is $204.80 per day. Those numbers yield an estimated amount in controversy for the waiting time penalties of $632,825.11 (103 former employees x $204.80 per day x 30 days).

### G. Attorney Fees

Where the law entitles the plaintiff to an award of attorney fees if he is successful, those future attorney fees are at stake in the litigation and "must be included in the amount in controversy." *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 795 (9th Cir. 2018). Under the percentage method, California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent. *See Garibay v. Archstone Cmtys. LLC*, 539 Fed. App'x 763, 764 (9th Cir. 2013) (holding "25% [of the plaintiffs'] recovery is the 'benchmark' level for reasonable attorney's fees in class action cases"); *Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116- IEG WMC, 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013). ILS urges adoption of the 25% benchmark here.

The 25% benchmark does not apply as a matter of law. *See Frisch*, 889 F.3d at 795, 797 (noting 25% benchmark would not apply where "a court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place"). But only special circumstances justify a departure from the 25% benchmark, *see Reyes v. Bakery and Confectionary Union*, 281 F. Supp. 3d 833, 861 (N.D. Cal. Dec. 28, 2017) (quoting

15

*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)[7], and neither party has raised or anticipated any such circumstance here. None of the factors counseling against the application of the 25% are present. ILS's proposed 25% benchmark represents a fair estimate of the fees in controversy.

\*\*\*

Accordingly, the amount in controversy is calculated as follows:

- Amount in Controversy (Claims Only): $808,374.68 (meal and rest period claims) + $1,276,449.96 (unpaid minimum wage claims) + $324,750.00 (wage statement claims) + $69,501.93 (failure to reimburse claims) + $465,819.52 (unpaid overtime wage claims) + $632,825.11 (waiting time penalties) = $3,577,720.27
- Attorney Fees: $3,577,720.27 x .25 = $894,430.07

Total Amount in Controversy: **$4,472,150.34**

ILS comes up short of the CAFA jurisdictional threshold

**CONCLUSION**

For the foregoing reasons, the motion to remand this case to the Superior Court of California, County of San Francisco, is GRANTED.

**IT IS SO ORDERED.**

Dated: January 31, 2025

William H. Orrick
United States District Judge

---

[7] As the Ninth Circuit explained in *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015), "[w]hen considering whether to depart from the 25% benchmark, courts consider a number of factors, including whether class counsel 'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.'" (internal citations omitted). These factors can only be evaluated at the end of the case.